# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VERONICA HASBUN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12 C 2543 |
| v. ) | |
| ) | |
| UNITED STATES and RESURRECTION ) | |
| HEALTH CARE CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On February 7, 2013, Plaintiff Veronica Hasbun filed the present one-count Amended Complaint sounding in negligence against Defendants the United States and Resurrection Health Care Corporation pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671. Before the Court are Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendants' motions and dismisses this lawsuit in its entirety. *See Bogie v. Rosenberg,* 705 F.3d 603, 608, 616 (7th Cir. 2013) (dismissal with prejudice appropriate if amending allegations would be futile).

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)

(citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

## PROCEDURAL BACKGROUND

On December 4, 2009, Ms. Hasbun commenced a civil action in the Circuit Court of Cook County, Illinois against Yam Tong, M.D. ("Dr. Tong"), Resurrection Health Care Corporation ("Resurrection"); and PCC Community Wellness Center ("PCC"), alleging assault and battery, negligence, negligent supervision, and intentional infliction of emotional distress. (R. 32, Am. Compl. ¶ 8.) Dr. Tong was a physician for PCC — a private entity that receives grant money from the United States Public Health Service pursuant to 42 U.S.C. § 233 — and thus Dr. Tong and PCC are considered employees of the United States for purposes of liability protection under the FTCA. (*Id*. ¶¶ 9, 10.)

Accordingly, on March 31, 2010, the United States filed a notice of removal of the action to federal court and notice that the United States would be substituted as a party Defendant in lieu of Dr. Tong and PCC. (*Id.* ¶ 11.) In this earlier lawsuit, the district court dismissed Ms. Hasbun's claims without prejudice for failure to exhaust. (*Id.* ¶ 12.) Thereafter, Ms. Hasbun filed an administrative action with the Department of Health and Human Services ("DHHS")

2

regarding her FTCA claim. (*Id*. ¶¶ 13, 14.) DHHS did not take action within six months of Ms. Hasbun's filing, and thus she filed the present lawsuit on April 6, 2012.[1] (*Id*. ¶¶ 16, 17.) Plaintiff's original Complaint in the present lawsuit alleged both negligent supervision and negligence against the United States and Resurrection. On January 17, 2013, the Court granted Defendants' motions to dismiss without prejudice and granted Ms. Hasbun leave to file an Amended Complaint. In her Amended Complaint, Ms. Hasbun does not bring negligent supervision claims against Defendants, but instead brings negligence claims against the United States and Resurrection.

## FACTUAL BACKGROUND

In her Amended Complaint, Ms. Hasbun alleges that on January 22, 2009, she was having pains in her lower abdominal area, and therefore, she made an appointment through Resurrection to visit Dr. Tong. (*Id*. ¶ 19.) Further, Ms. Hasbun alleges that Resurrection's website lists Dr. Tong as an obstetrician and gynecologist at Resurrection's West Suburban Medical Center and permitted patients to make online appointments with Dr. Tong via its website. (*Id*. ¶ 20.) Ms. Hasbun states that she made her appointment with Dr. Tong through Resurrection and that Resurrection did not inform her that Dr. Tong was not an employee or agent of Resurrection, but instead led her to believe he was an employee of Resurrection. (*Id*. ¶¶ 20, 21.)

On the day of her appointment with Dr. Tong, Ms. Hasbun went into the examination room and first met with a female nurse. (*Id*. ¶ 23.) The nurse went over routine questions,

---

[1] On December 13, 2012, the Executive Committee reassigned this lawsuit to the Court due to the Honorable Blanche M. Manning's retirement from the bench. (R. 23.)

3

checked Ms. Hasbun's blood pressure and weight, and asked about pregnancies and miscarriages. (*Id*.) Ms. Hasbun also alleges that the nurse told her that she was going to bring the doctor in, who would talk with her for a minute, and then they would begin the examination. (*Id*. ¶ 24.) The female nurse then left the examination room. (*Id*.) Dr. Tong, a male doctor, proceeded to enter the examination room and asked Ms. Hasbun follow-up questions about her previous pregnancies. (*Id*. ¶ 25.) During these questions, Ms. Hasbun was sitting on the examination table and was expecting the female nurse to walk in to monitor the examination. (*Id.* ¶ 26.) Dr. Tong then began the examination by physically forcing Ms. Hasbun's feet into the stirrups while pulling her thighs down towards the end of the table. (*Id*.) Thereafter, Ms. Hasbun asked Dr. Tong where the female nurse was to which he responded that she was busy. (*Id.* ¶ 27.) Ms. Hasbun further alleges that she asked Dr. Tong to wait for the female nurse to come back before beginning the examination, but that Dr. Tong ignored her request. (*Id.* ¶ 28.)

Dr. Tong continued the physical examination without the female nurse or chaperone present. (*Id.* ¶ 29.) Ms. Hasbun contends that at one point during the examination, Dr. Tong said to her — "You're a very attractive woman. Do you have a lot of sexual partners?" (*Id.* ¶ 30). Also, Ms. Hasbun alleges that during the examination, Dr. Tong began playing with her labia by pulling and spreading the skin while he commented that "It smells good, very pretty, very nice and clean." (*Id. * ¶ 31.) Ms. Hasbun maintains that at some point during a normal gynecological examination, the doctor customarily inserts two fingers and applies pressure around the vaginal walls to check for pain. (*Id.* ¶ 32.) After Dr. Tong did this, Ms. Hasbun alleges that instead of removing his fingers, he moved his fingers in and out of Ms. Hasbun's vagina three times and wiggled his fingers inside of her. (*Id*.) Furthermore, Ms. Hasbun asserts

4

that she asked Dr. Tong to stop what he was doing, but Dr. Tong did not stop and did not respond to her requests. (*Id.* ¶ 33.) At the end of the examination, instead of leaving the examination room and allowing Ms. Hasbun to get dressed, Ms. Hasbun contends that Dr. Tong positioned himself between her legs so that her legs were pinned open after which Dr. Tong discussed the examination with her. (*Id.* ¶ 34.) In addition, Ms. Hasbun alleges that as Dr. Tong was explaining the examination results, he began rubbing his hands up and down her thighs and stroking her hair while he leaned into her. (*Id.*) Ms. Hasbun maintains that Dr. Tong's contact with her was unwelcome, offensive, and exceeded the scope of the examination he was engaged to perform. (*Id.* ¶¶ 35-38.)

## ANALYSIS

"The Federal Tort Claims Act makes the federal government liable for acts or omissions by its employees that would be torts in the state in which they occurred had they been committed by someone other than a federal employee." *Glade ex rel. Lundskow v. United States,* 692 F.3d 718, 721 (7th Cir. 2012). "The 'law of the place where the act or omission occurred' governs FTCA claims, 28 U.S.C. § 1346(b)(1), so we rely on Illinois law here." *Furry v. United States*, ___ F.3d ___, 2013 WL 952412, at *3 (7th Cir. Mar. 13, 2013); *see also Lundskow*, 692 F.3d at 723-24. Pursuant to Illinois law, a successful negligence claim requires Ms. Hasbun to show "that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Blood v. VH-1 Music First,* 668 F.3d 543, 546 (7th Cir. 2012) (quoting *First Springfield Bank & Trust v. Galman,* 188 Ill.2d 252, 242 Ill.Dec. 113, 720 N.E.2d 1068, 1071 (Ill. 1999)).

Here, both Resurrection and the United States argue that Ms. Hasbun cannot establish that they owed her a duty. Under Illinois law, "[w]hether a duty is owed presents a question of law, while breach of duty and proximate cause present questions of fact." *Swearingen v. Momentive Specialty Chem., Inc.,* 662 F.3d 969, 972 (7th Cir. 2011). "A tort duty can derive either from the common law or from statute." *Department of Labor v. Valdivia,* 955 N.E.2d 631, 635, 353 Ill.Dec. 164, 168 (2d Dist. 2011). "The touchstone of the duty analysis is to ask whether the plaintiff and defendant stood in such a relationship to one another that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Swearingen,* 662 F.3d at 972 (quoting *Vancura v. Katris,* 238 Ill.2d 352, 345 Ill.Dec. 485, 939 N.E.2d 328, 347 (Ill. 2010)). In general, "Illinois common law imposes a duty of 'reasonable care to avoid injuring other people,'" and while "persons generally have no duty to protect against dangers created by third parties, they do have a duty to protect against harms created by their own conduct." *Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dir.,* 593 F.3d 507, 515 (7th Cir. 2010) (internal citation omitted). Also, the "duty of care to a stranger is generally limited to avoiding negligently injuring him, however, and thus does not include a duty of protection, prevention, or rescue." *Lundskow,* 692 F.3d at 722.

In her legal memorandum, Ms. Hasbun argues that Defendants had a duty to adequately monitor Dr. Tong's performance, which speaks to Defendants' negligent supervision. In her Amended Complaint, however, Ms. Hasbun has not alleged a negligent supervision claim as she did in her original Complaint. Under Illinois law, courts "must consider whether a duty arises within the context of the cause of action actually pleaded, not whether some other theory of liability not pleaded would dictate a different result." *Nelson v. Aurora Equip. Co.,* 391

6

Ill.App.3d 1036, 1038, 330 Ill.Dec. 909, 909 N.E.2d 931 (2d Dist. 2009). As discussed in the Court's January 17, 2013 Memorandum, Opinion, and Order dismissing Ms. Hasbun's negligent supervision claims without prejudice, under Illinois law, to "succeed in an action for negligent supervision, the plaintiff must plead and prove that the employer knew or should have known that its employee had a particular unfitness for his position so as to create a danger of harm to third persons and that the employer's failure to safeguard the plaintiff against this particular unfitness proximately caused the plaintiff's injury." *Platson v. NSM, Am., Inc.,* 322 Ill.App.3d 138, 144, 255 Ill.Dec. 208, 748 N.E.2d 1278, 1284 (2d Dist. 2001); *see also Helfers-Beitz v. Degelman,* 406 Ill.App.3d 264, 270, 345 Ill.Dec. 907, 939 N.E.2d 1087 (3d Dist. 2010); *Doe v. Brouillette,* 389 Ill.App.3d 595, 606, 329 Ill.Dec. 260, 906 N.E.2d 105, 116 (1st Dist. 2009). Ms. Hasbun did not make any such allegations in her original Complaint, and thus the Court granted Defendants' motions to dismiss Ms. Hasbun's negligent supervision claims without prejudice. The Court granted Ms. Hasbun leave to amend to include any such allegations in her Amended Complaint, but Ms. Hasbun has not brought a negligent supervision claim in her Amended Complaint nor has she alleged any facts in her Amended Complaint that plausibly suggest Defendants knew or should have known of any particular danger that Dr. Tong presented to patients.

Ms. Hasbun also relies on medical malpractice cases for the proposition that Defendants owed her a duty to monitor and protect her from Dr. Tong. *See Gilbert v. Sycamore Mun. Hosp.*, 156 Ill.2d 511, 518, 190 Ill.Dec. 758, 622 N.E.2d 788 (Ill. 1993); *Malanowski v. Jabamoni,* 293 Ill.App.3d 720, 729, 228 Ill.Dec. 34, 688 N.E.2d 732 (1st Dist. 1997). Ms. Hasbun's lawsuit, however, is not based on Dr. Tong's breach of the standard of care in providing medical

7

treatment, but instead, it is based on Dr. Tong's alleged offensive sexual assault and battery. (Am. Compl. ¶¶ 39, 47, 48, 53-55.) Moreover, Ms. Hasbun's reliance on these cases to support her argument is misplaced because Ms. Hasbun has not brought a negligent supervision claim, as explained above. Finally, Ms. Hasbun does not she contend that the parties had a "special relationship," such as innkeeper and guest. *See Doe v. Goff,* 306 Ill.App.3d 1131, 1134, 240 Ill.Dec. 190, 716 N.E.2d 323 (3d Dist.1999); *see also Lundskow,* 692 F.3d at 721-22.

Here, the basis of Ms. Hasbun's lawsuit, namely, Dr. Tong's offensive sexual assault and battery, raises another issue regarding the United States' liability under the FTCA. The FTCA precludes imposing liability on the government under a theory of respondeat superior for certain intentional torts such as battery, including sexual battery. *See* 28 U.S.C. § 2680(h); *Levin v. United States,* 133 S.Ct. 1224, 1228 (2013) ("We have referred to § 2680(h) as the 'intentional tort exception.'"); *see also Lundskow,* 692 F.3d at 721. Therefore, Ms. Hasbun must allege that the United States was directly liable, instead of relying upon respondeat superior, which is classified as derivative or vicarious liability. *See Lundskow,* 692 F.3d at 721.

To that end, Ms. Hasbun argues that both the United States and Resurrection had a duty to comply with the American Medical Association's Code of Medical Ethics, Opinion 8.21, Use of Chaperones During Physical Exams, which states in its entirety:

> From the standpoint of ethics and prudence, the protocol of having chaperones available on a consistent basis for patient examinations is recommended. Physicians aim to respect the patient's dignity and to make a positive effort to secure a comfortable and considerate atmosphere for the patient; such actions include the provision of appropriate gowns, private facilities for undressing, sensitive use of draping, and clear explanations on various components of the physical examination. *A policy that patients are free to make a request for a chaperone should be established in each health care setting.* This policy should be communicated to patients, either by means of a well-displayed notice or preferably through a conversation initiated by the intake nurse or the physician.

> The request by a patient to have a chaperone should be honored.
>
> An authorized health professional should serve as a chaperone whenever possible. In their practices, physicians should establish clear expectations about respecting patient privacy and confidentiality to which chaperones must adhere. If a chaperone is to be provided, a separate opportunity for private conversation between the patient and the physician should be allowed. The physician should keep inquiries and history-taking, especially those of a sensitive nature, to a minimum during the course of the chaperoned examination.

American Medical Association, *Code of Medical Ethics*, Opinion 8.21 (Use of Chaperones During Physical Exams) (emphasis added).[2]

To establish that AMA Opinion 8.21 provides a basis for Defendants' duty, Ms. Hasbun "must provide legal authority substantiating that the courts of this jurisdiction have determined that [Defendants] owe this particular duty to their patients, or the plaintiff[] must provide legal reasoning substantiating that this court should now determine that [Defendants] owe this particular duty to their patients." *Varela ex rel. Nelson v. St. Elizabeth's Hosp. of Chicago, Inc.*, 372 Ill.App.3d 714, 723, 867 N.E.2d 1, 8, 310 Ill.Dec. 688, 695 (1st Dist. 2006). Ms. Hasbun has done neither.

An Illinois Appellate Court has stated on one occasion "that a violation of the AMA's medical ethics does not in itself amount to a breach of the legal standard of care, such a violation certainly is relevant to determining whether a physician has breached his standard of care and certainly can form the basis of an expert's opinion that a physician has breached the standard of care." *Neade v. Portes,* 303 Ill.App.3d 799, 812, 237 Ill.Dec. 788, 710 N.E.2d 418 (2d Dist. 1999), *rev'd on other grounds,* 193 Ill.2d 433 (Ill. 2000). Ms. Hasbun, however, does not

---

[2] www.ama-assn.org/ama/pub/physician-resources/medical-ethics/code-medical-ethics/opinion821 (last visited Apr. 22, 2013).

9

present — and the Court could not find — any case law in which the Illinois courts concluded that a hospital's direct duty to its patients can be derived from the AMA's medical ethics opinions.

In addition, Ms. Hasbun has failed to provide the Court with any legal reasoning supporting her assertion that the AMA's ethics opinion regarding chaperones creates a duty under the circumstances. *See Nelson,* 372 Ill.App.3d at 723 ("It is not enough for the plaintiffs to state their subjective belief about the type and scope of duty that was owed."). Instead, she merely mentions the AMA's guideline in her Amended Complaint and legal memorandum as a basis for Defendants' duty. Without more, Ms. Hasbun has insufficiently alleged that Defendants had a duty to comply with the AMA's Code of Medical Ethics, Opinion 8.21, and thus her negligence claim fails. *See Lundskow,* 692 F.3d at 721-22 ("There is no tort of negligence without a breach of a duty owed the victim by the tortfeasor.").

## CONCLUSION

For the reasons given, the Court grants Defendants' Rule 12(b)(6) motions to dismiss with prejudice and dismisses this lawsuit in its entirety.

**Dated:** April 22, 2013

        **ENTERED**

        _____
        **AMY J. ST. EVE**
        **United States District Judge**